United States District Court
Southern District of Texas
**ENTERED**
January 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE | § | |
| USE AND BENEFIT OF GENERAL SUPPLY | § | |
| & SERVICES INC; dba GEXPRO, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-771 |
| | § | |
| VERITAS SUPPLY, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Before the Court is Defendant Kiewit Building Group, Inc.'s ("Kiewit's") and Defendant Travelers Casualty and Surety Co.'s ("Travelers'") Motion to Dismiss (Document No. 9). Plaintiff United States of America for the Use and Benefit of General Supply & Services, Inc. d/b/a GexPro ("GexPro") filed a Response to the Motion to Dismiss (Document No. 11), and Defendants Kiewit and Travelers then filed a Reply thereto (Document No. 17-1), as well as a Supplement to their Motion to Dismiss (Document No. 28). After considering these documents and the applicable law, the Court concludes that Defendants' Motion to Dismiss is PARTIALLY GRANTED.

**Background**

Defendant Kiewit, "as general contractor, entered into a construction contract with the National Aeronautics and Space Administration ("NASA") for the construction of a site utility tunnel and related improvements (the "Project[1]") at 2101 NASA Parkway, Houston, Texas 77058 (the "Real Property")" (Document No. 9 at 1). The Real Property is owned by the United

---

[1] This Project is referred to by Plaintiffs as the construction of a "Tunnel Cable System" (Document No. 13 at 3).

States "by and through NASA." *Id*. Kiewit "is the principal on a payment bond issued by [Defendant] Travelers for the Project (the "Payment Bond")." *Id*.

Kiewit entered into a contract with Defendant Veritas Supply, Inc. ("Veritas"), whereby Veritas would provide materials and services for the Project. *Id*. at 2. Specifically, Veritas would deliver these materials to Kiewit's electrical subcontractor for the Project, C.F. McDonald Electric, Inc. ("McDonald[2]"). *Id*. Veritas then entered into an agreement with Plaintiff GexPro, whereby GexPro would provide services and materials to Veritas. *Id*.; (Document No. 13 at 3). According to GexPro, Veritas accepted delivery of services and materials from GexPro, worth $238,010.63, but has "failed and refused to pay the just amount due" (Document No. 13 at 5).[3]

GexPro also alleges that "in order to meet the minority business enterprise requirements and to get the government credits, Kiewit told GexPro that Kiewit was going to insert Veritas as subcontractor in between Kiewit and GexPro. The sole purpose of Veritas becoming a subcontractor was so that Kiewit would be paid 8% of the prime contract under the minority credit regulations by the U.S. government" (Document No. 11 at 4). Kiewit admits that it "contracted directly with Veritas instead of having C.F. McDonald contract with Veritas in order to meet Kiewit's federal prime contract goals related to economically disadvantaged businesses," but denies that it made any assertion to GexPro that it was doing so in order to obtain monetary credit (Document No. 17-1 at 5).

---

[2] McDonald is not a party to this lawsuit.
[3] The materials flowed as follows: Gexpro → Veritas → McDonald → Kiewit (adopted from Defendants' Reply, Document No. 17-1 at 4).

The contractual relationships can be shown with an ←→ as follows:

NASA   ←→   Kiewit (Def.)        ←→        Veritas (Def.)        ←→        GexPro (Pl.)
            (General                       (Subcontractor
            Contractor)                    or Materialman)

In its Second Amended Complaint (Document No. 13), Plaintiff asserts several causes of action: (1) breach of contract by Veritas; (2) a cause of action under the Miller Act against Kiewit and Travelers on the payment bond; (3) quantum meruit against Veritas, Elvira Ocampo and Jesus Ocampo[4], for the reasonable value of the Tunnel Cable System; (4) violations of the Texas Trust Fund Act by Elvira Ocampo, Jesus Ocampo, Veritas and Kiewit; (5) a fraud claim against Kiewit; and (6) an equitable estoppel claim against Kiewit and Travelers (Document No. 13 at 5-12).

**Standard of Review**

*Rule 12(b)(6)*

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (*citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," stating a claim that is "plausible on its face." *Id*. at 545, 547 (citations omitted).

"'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Ashcroft v.*

---

[4] The Ocampo's are "principals, owners, and/or agents of Veritas" (Document No. 13 at 8).

*Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.

*Rule 9(b)*

Federal Rule of Civil Procedure 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person must be averred generally."

"In every case based upon fraud, Rule 9(b) requires the plaintiff to allege as to each individual defendant 'the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.'" *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001) (citations omitted). "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (*quoting United States ex. rel. Riley v. St. Luke's Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004)).

Unlike the alleged fraud, Rule 9(b) allows a plaintiff to plead intent to deceive or defraud generally. Nevertheless a mere conclusory statement that the defendant had the required intent is insufficient; the plaintiff must set forth specific facts that raise an inference of fraudulent intent, for example, facts that show the defendant's motive. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ("Although scienter may be averred generally, case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific

facts that support an inference of fraud."); *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

**Discussion**

*(1) Breach of Contract*

This claim is only against Veritas; therefore Kiewit and Travelers do not seek its dismissal.

*(2) Miller Act*

Plaintiff alleges as follows:

> Kiewit, as principal, and Travelers, as surety, undertook a direct obligation with the United States of America to provide a payment bond, and for Travelers to act as the surety for the Project. In accordance with that obligation, Kiewit and Travelers issued a payment bond securing the debts and obligations of the general or prime contractor, Kiewit, resulting from the project with the United States. Kiewit is the principal obligor on the bond. Veritas was a subcontractor to Kiewit as defined by the Miller Act 40 U.S.C. §3133. Pursuant to the obligation under the Miller Act, 40 U.S.C. §3133, and the terms of the bond, Travelers and Kewit [*sic*] have an obligation to make payment of all amounts due and owing to GexPro who provided services and materials to Veritas. […].
>
> By Travelers' and Kiewit's failure to make payment to GexPro of the amounts due and owing, Travelers and Kiewit have breached their obligations to make payment under the terms and conditions of the payment bond […].

(Document No. 13 at 6-7). The parties agree that the main issue is "whether Veritas is a 'subcontractor' as defined in the Miller Act so that GexPro, as a subcontractor, remains a beneficiary under the payment bond posted by Kiewit" (Document No. 11 at 5; Document No. 17-1 at 1). Under the Miller Act, a person "that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under Section 3131 of this title and that has not been paid in full within 90 days […] may bring a civil action on the payment bond." 40 U.S.C. 3133(b)(1). This relief includes those with a "direct contractual

relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond." 40 U.S.C. 3133(b)(2). Therefore, if Veritas is a subcontractor under the Miller Act, GexPro is entitled to a civil action on the payment bond.

However, if Veritas is merely a materialman under the contract, GexPro is not entitled to a claim under the Miller Act. The Supreme Court, in *Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, found that the Miller Act

> makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-contractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a *subcontractor* […]. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act.

322 U.S. 102, 107-08 (1944) (emphasis added). As discussed below, Plaintiff has made relevant claims that Kiewit misrepresented Veritas's status as a subcontractor (Document No. 13 at 12). As the Court is giving Plaintiff an opportunity to re-plead these claims, the Court will not consider whether Veritas is a subcontractor or a materialman at this time.

*(3) Quantum Meruit*

In its First Amended Complaint, GexPro alleges that "Travelers is also under an obligation to pay GexPro the amount due that Veritas and Kiewit have failed to pay" (Document No. 7 at 6). In response to this claim, Kiewit and Travelers state that Gexpro's claim against Travelers based on quantum meruit is preempted by the Miller Act (Document No. 9 at 6). In its Response, Plaintiff states that its quantum meruit cause of action is only against Veritas, Elvira Ocampo and Jesus Ocampo (Document No. 11 at 3), but Plaintiff's Second Amended Complaint still includes a quantum meruit claim that "Kiewit and Travelers are under an obligation pursuant to the payment bond to pay GexPro the amount due that Veritas has failed to pay" (Document

No. 13 at 7-8). It is therefore not clear whether Plaintiff intends to allege a quantum meruit claim against Kiewit or Travelers.

Regardless, Plaintiff fails to state a claim of quantum meruit against both Travelers and Kiewit. Plaintiff only includes one sentence relevant to these defendants' liability. The essential elements for recovery under quantum meruit are:

> (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the Plaintiff, in performing such services was expecting to be paid by the person sought to be charged.

*Schuchart & Associates, Prof'l Engineers, Inc. v. Solo Serve Corp.*, 540 F. Supp. 928, 945 (W.D. Tex. 1982). Plaintiff has not alleged any of the following elements with regard to Kiewit or Travelers. Therefore, Plaintiff's quantum meruit claims against Kiewit and Travelers are dismissed without prejudice.[5] *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

*(4) Texas Trust Fund Act*

Plaintiff's allegations against Kiewit are as follows:

> Funds received by Defendants, Elvira T. Ocampo, Jesus Ocampo, Veritas and Kiewit, on the Project was [*sic*] utilized for other than the reasonable cost and overhead of the Project for which the funds were received. The principals of Kiewit and Veritas are personally liable under the Texas Trust Fund Act, Section 162 of the Texas Property Code, to the extent they were paid funds on a construction contract and there remains unpaid a subcontractor on the project. Kiewit is believed to have been paid by NASA because it claims to have paid the subcontractor, Veritas, all but $63,000.00 of the subcontract amount of $524,849.00. Moreover, Kiewit issued a joint check on November 20, 2014 for $44,458.23 payable jointly to Veritas and GexPro. It thereby recognized its liability for GexPro's unpaid invoices.
> Defendants, Elvira T. Ocampo and Jesus Ocampo, are the principals, owners, and/or agents of Veritas and received funds from Kiewit who received funds from the Project owners in payment of the Tunnel Cable System provided by GexPro.

---

[5] The Court does not need to consider Defendants' argument that a quantum meruit claim is preempted by the Miller Act, due to the sparsity of Plaintiff's allegations.

> Defendants, Elvira T. Ocampo, Jesus Ocampo, Veritas and Kiewit, intentionally did not pay GexPro, although they knew that the bills were due and owing.
>
> The funds received by said Defendants on the above mentioned Project was [*sic*] misappropriated to the detriment of GexPro.
>
> Veritas, Elvira T. Ocampo, Jesus Ocampo, and Kiewit are Trustees for GexPro by operation of law and have a fiduciary duty to GexPro.
>
> Funds received by said Defendants on the above-mentioned Project were trust funds for the benefit of GexPro.
>
> Funds collected by Veritas, Elvira T. Ocampo, Jesus Ocampo, and Kiewit on the Project was [*sic*] misappropriated by them while acting in their fiduciary capacity as Trustees.

(Document No. 13 at 8-9). Defendants argue that GexPro's claim against Kiewit under the Texas Trust Fund Act should be dismissed, because "Plaintiffs allegations against Kiewit in Section VIII of the Complaint are nothing more formulaic recitations of the elements of a cause of action under the Texas Trust Fund Act" (Document No. 9 at 8). Defendants also argue that "Additionally, Gexpro's allegation that Kiewit is a trustee for Gexpro 'by operation of law' is a legal conclusion devoid of any factual showing that Kiewit had control or direction of the trust funds to which Gexpro claims it is entitled." *Id*. at 8-9.

"To prove the misapplication of construction trust funds, the plain language of the statute require[s] only that (a) a trustee 'intentionally or knowingly or with intent to defraud directly or indirectly' (b) 'retain[ ], use [ ], disburse [ ], or otherwise divert[ ] trust funds' (c) 'without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries.'" *Choy v. Graziano Roofing of Texas, Inc.*, 322 S.W.3d 276, 295 (Tex. App. 2009) (*quoting* Tex. Prop. Code Ann. § 162.031(a)). The Court agrees with Defendants that Plaintiff's allegations are merely "formulaic recitations of the[se] elements." *Twombly*, 550 U.S. at 545. Plaintiff does not provide any detail to its assumption that Kiewit was paid by NASA, or its claim that Kiewit has paid Veritas. Plaintiff also does not explain how paying sums to Veritas and GexPro constitutes a misappropriation of funds. It does not follow that Kiewit would pay most of its contractual

obligation to Veritas, or issue a joint check to Veritas and GexPro, with the intent to deprive Plaintiff of the funds. Therefore Plaintiff's claim against Kiewit is dismissed without prejudice. *Great Plains*, 313 F.3d at 329.

*(5) Fraud*

> Plaintiff's allegations of fraud against Kiewit are as follows:

> In the alternative, Kiewit's conduct is fraudulent as to GexPro and the government. First, Kiewit represented to GexPro that the minority contractor being inserted into the chain of contract was a subcontractor and not a mere pass through. Kiewit then signed a Material only contract with Veritas rather than a subcontractor contract but failed to tell GexPro. GexPro relied on Kiewit's Miller Act payment bond and would not have extended credit to Veritas without bond protection, had it known Veritas was not a true subcontractor who was not going to perform any service whatsoever, all as claimed by Kiewit. Second, Kiewit intentionally and deliberately mislead the U.S. Government and NASA in order to obtain the minority credits.

(Document No. 13 at 12). Therefore Plaintiff alleges that Kiewit defrauded GexPro, as well as the United States Government and NASA. Defendants argue that this fraud claim is not plead with the specificity required by Rule 9(b) (Document No. 18 at 2). Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (citations omitted). Plaintiff fails to state a claim of fraud as to the United States government or NASA, as Plaintiff's claim only includes a conclusory statement regarding Kiewit's intent, without including any other elements of fraud.

In addition, Plaintiff's fraud allegations regarding misrepresentations made to GexPro do not provide sufficient detail to state a claim. Plaintiff does not state when or where Kiewit made

the alleged misrepresentation; nor does Plaintiff disclose the members of that conversation. *Hernandez*, 200 F.R.D. at 291. Furthermore, Plaintiff does not plead intent, as required under the fourth prong; nor does Plaintiff allege that the speaker of the misrepresentation knew, at the time, that Veritas would not be a subcontractor (the third prong). Therefore Plaintiff's fraud claims are dismissed without prejudice. *Great Plains*, 313 F.3d at 329.

*(6) Equitable Estoppel*

Plaintiff states that "[e]quitable estoppel prevents Kiewit from obtaining the benefits of GexPro's expertise and specialized materials on this Project in addition to gaining minority set-aside credits, and Kiewit and Travelers should be equitably estopped from denying that Veritas is a subcontractor as that term is defined in the Miller Act" (Document No. 13 at 12). Therefore Plaintiff alleges three separate equitable estoppel claims, regarding (1) Kiewit's receipt of the materials, (2) Kiewit's receipt of the minority set-aside credits, and (3) Kiewit and Travelers' denial that Veritas is a subcontractor.

Defendants argue that this claim is preempted by the Miller Act[6], and that Plaintiff fails to state a claim for equitable estoppel (Document No. 28 at 5-6). First, the Court finds that the first two claims should be dismissed, because, generally, "equitable estoppel is an affirmative defense, not an affirmative claim for relief." *Knapik v. BAC Home Loans Servicing, LP*, 825 F. Supp. 2d 869, 872 (S.D. Tex. 2011). However, equitable estoppel can be used "as a defensive plea to bar a defendant from raising a particular defense." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Cook v. Smith*, 673 S.W.2d 232, 235 (Tex. App. 1984), *writ refused NRE* (Nov. 28, 1984) (allowing a plaintiff to "invoke equitable estoppel to prevent an opponent from pleading limitations, if the opponent, his agent, or representatives make

---

[6] The Court does not need to address this argument, as Plaintiff fails to state a claim of equitable estoppel.

representations which induce the plaintiff to delay filing suit within the applicable limitations period."). Plaintiff's third equitable estoppel claim appears to fall into this category, but, for the reasons below, fails to state a claim.

A party asserting an equitable estoppel claim must show: "(1) a false representation or concealment of material facts made with knowledge (actual or constructive) of those facts, (2) with intention that it should be acted on, (3) to a party without knowledge, or means of knowledge of those facts, (4) who detrimentally relied upon those representations." *In re Oparaji*, No. 10-30968, 2013 WL 889481, at *4 (Bankr. S.D. Tex. Mar. 8, 2013) (*citing In re Perry,* 425 B.R. 323, 375 (Bankr.S.D.Tex.2010)). As described above in subsection (5), Plaintiff does not state that Kiewit made the alleged misrepresentation with the intent that Plaintiff would act on it, nor does Plaintiff allege that the speaker knew the statement was false at the time. Furthermore, Plaintiff does not allege that Travelers made any misrepresentation. Therefore, Plaintiff's equitable estoppel claims against Kiewit and Travelers are dismissed without prejudice.

**Conclusion**

The Court hereby

ORDERS that Defendants' Motion to Dismiss (Document No. 9) is PARTIALLY GRANTED. Plaintiff's quantum meruit claims, Texas Trust Fund Act claims, fraud claims and equitable estoppel claims are all DISMISSED WITHOUT PREJUDICE.

SIGNED at Houston, Texas, this 27th day of January, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE